# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

ANNIE P. PERRY,             )
                                         )

      Plaintiff,          )
                                         )

v.                           )    Case No.:  2:18-cv-01845-JEO
                                         )

MATRIX FINANCIAL SERVICES   )
CORP., et al.,              )
                                         )

      Defendants.      )

## MEMORANDUM OPINION

In this action, Plaintiff Annie P. Perry has alleged a variety of federal and state law claims against Defendants Matrix Financial Services Corporation ("Matrix"), Nationstar Mortgage, LLC ("Nationstar"), and Mortgage Electronic Registration System, Inc. ("MERS").  (Doc. 24).   The claims are based on allegations that Defendants falsely reported that Perry was in default on a mortgage loan and wrongfully initiated foreclosure proceedings on her property, among other things.  (*Id.*).  Defendants have moved to dismiss the amended complaint in its entirety.  (Doc. 26).   For the reasons that follow, the court[1]  concludes that the

---

[1] The action was originally assigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and the court's general order of reference dated January 2, 2015. The parties have since consented to an exercise of plenary jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  (Doc. 12).

motion is due to be granted in full with regard to Defendant MERS and granted in part and denied in part with regard to the other two Defendants.

## I.     PROCEDURAL HISTORY

Perry filed this action in the Circuit Court of Jefferson County, Alabama, asserting fourteen separate claims against Defendants: negligence, wantonness, unjust enrichment, wrongful foreclosure, slander of title, breach of contract, fraud, false light, defamation/libel/slander, violation of the Truth in Lending Act, violation of the Real Estate Settlement Procedures Act, violation of the Fair Credit Reporting Act, violation of the Fair Debt Collection Practices Act, and a claim for declaratory relief.  (Doc. 1-1 at 3-40).  Defendants removed the action to this court and then moved to dismiss all of the claims contained in the complaint, or, to the extent any claims remained, moved for a more definite statement of those claims. (Docs. 1, 8).

In response to the motion to dismiss, Perry filed a motion for leave to file an amended complaint, noting the different pleading standards in federal and state court.  (Doc. 15).  Despite Defendants argument that any amendment would most likely be futile, (doc. 16), the court granted Perry's motion to file an amended complaint.  (Doc. 17).   After two extensions, (docs. 20 & 25), Perry filed her

amended complaint on January 14, 2019.[2]  (Doc. 24).  The amended complaint

contains a more detailed set of factual allegations and deleted two claims

(wrongful foreclosure and slander of title), but otherwise the differences between

the two complaints are minimal.  As before, Defendants have moved to dismiss all

the claims in the amended complaint.  (Doc. 26).  The motion has been fully

briefed and is now ripe for decision.

## II.    STANDARD OF REVIEW

Defendants have moved for dismissal pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, which authorizes the dismissal of all or some of

the claims in a complaint if the allegations fail to state a claim upon which relief

can be granted.  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and

plain statement of the claim showing that the pleader is entitled to relief," in order

to "give the defendant fair notice of what the ... claim is and the grounds upon

which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court assumes the

factual allegations in the complaint are true and gives the plaintiff the benefit of all

reasonable factual inferences.  *Hazewood v. Foundation Financial Group, LLC*,

551 F.3d 1223, 1224 (11th Cir. 2008).  However, "courts 'are not bound to accept

as true a legal conclusion couched as a factual allegation.'"  *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286

---

[2] In light of the filing of the amended complaint, Defendants' original motion to dismiss was
deemed moot.  (Doc. 25).

(1986)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Nor is it proper to assume that a plaintiff can prove facts he has not alleged or that the defendants have violated the law in ways that have not been alleged. *Twombly*, 550 U.S. at 563 n.8 (citing *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*, 550 U.S. at 555 (citations, brackets, and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level. . . ." *Id*. Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" i.e., its "factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations omitted).

Defendants have also moved for a dismissal of Perry's fraud claim pursuant to Rule 9(b). Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

Fed. R. Civ. P. 9(b).  The "particularity" requirement "serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'"  *Ziemba v. Cascade Int'l, Inc*., 256 F.3d 1194, 1202 (11th Cir. 2001) (citation omitted).

## III.   STATEMENT OF FACTS

Perry alleges that she bought property located at 333 Normandy Lane in Chelsea Alabama, financed the purchase with Movement Mortgage, LLC, and executed a mortgage with MERS, "acting solely as nominee for Movement Mortgage," on November 24, 2015.  (Doc. 24 ¶ 5).   The loan was later "sold and transferred" and/or assigned to both Nationstar and Matrix.  (*Id*. ¶ 7).  Although the allegations of the amended complaint are anything but clear as to the timing or order of the alleged sales/transfers/assignments, from what the court can glean, Perry seems to allege that MERS sold and transferred and/or assigned the loan to Nationstar, and Nationstar also serviced the loan.  (*Id*.).  Then, at some later point, the loan was transferred to Matrix and Nationstar remained the servicer of the loan.  (*Id*.).   Perry "disputes the validity" of the transfers and/or assignments, (*id*. ¶¶ 7, 13), but provides no factual basis for this allegation and does not attach a copy of any allegedly defective or invalid transfers, sales or assignments to the amended complaint.

In June 2017, Perry complained to Defendants[3] that they were improperly maintaining her escrow account by charging fees to the account and by demanding payment to the account when no payment was due. (*Id*. ¶ 22). Perry alleges Defendants did nothing to address the situation. (*Id*.). Additionally, she alleges Defendants "continually during 2017 improperly held [her] payments in a 'suspense account'" and "charged late fees and interest as if the payments had not been made even though they had received the payments." (*Id*.).

On December 5, 2017, Perry sent a qualified written request ("QWR")[4] to both Nationstar and the attorney for Nationstar. (*Id*. ¶ 88). The letter included a statement for the reasons Perry believed there was an error regarding her mortgage loan and included sufficient details for Nationstar to respond. (*Id*.). Nationstar never acknowledged receipt of the QWR and never responded to it. (*Id*. ¶ 89).

On June 6, 2018, Defendants[5] initiated foreclosure proceedings on Perry's property. (*Id*. ¶¶ 9, 23). The foreclosure sale was reported to the national credit

---

[3] The amended complaint does not identify to which Defendant Perry complained, but instead uses the generic "Defendants." (Doc. 24 ¶ 22).

[4] A QWR is written correspondence to the servicer that "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

[5] Although this paragraph of the amended complaint alleges that "Defendants" initiated the foreclosure proceedings, earlier in her statement of facts, Perry states that Matrix "was the purported owner of the loan at the time that the foreclosure sale was initiated and is the party that advertised the property for foreclosure sale." (Doc. 24 ¶ 7).

bureaus, which damaged Perry's reputation and credit. (*Id*. ¶¶ 12, 25). Additionally, the foreclosure sale date was published in the Shelby County Reporter in June, July, August and September 2018, and included false information regarding her alleged default. (*Id*. ¶ 25).

According to Perry, she was not in default on her loan and Defendants knew she was not in default at the time they began foreclosure proceedings. (*Id*. ¶¶ 11, 14, 26). On September 6, 2018, Perry alleges she sent another QWR, as well as a notice of error ("NOE") to Nationstar and its attorneys. (*Id*. ¶ 88). Nationstar did not respond. (*Id*. ¶ 89).

Perry alleges that prior to September 2017, Defendants[6] accepted and cashed her monthly payments, but did not properly apply them to her account "pursuant to paragraph 2 of the mortgage contract." (*Id*. ¶¶ 20, 21). When she sent her monthly payment to Defendants in October, November and December 2017 and January 2018, Defendants refused the payment and returned it to her without explanation. (*Id*. ¶ 20). When Perry called and asked about the returned payments, Defendants told her she was in default for failure to make payments without any further explanation. (*Id*.). Defendants told Perry they would not accept any further payments and her account was being turned over for foreclosure. (*Id*.).

---

[6] Again, the amended complaint does not identify to which Defendant Perry sent these monthly payments or which Defendant she called regarding the returned payments. Instead, the amended complaint uses the generic "Defendants" throughout these allegations.

As of the time Perry filed her amended complaint, she continued to reside in the property. (*Id*. ¶ 6). It is unclear from the amended complaint whether a foreclosure sale was ever scheduled.

## IV. DISCUSSION

In her amended complaint, Perry states twelve counts - four federal violations, seven state law violations, and a count for declaratory judgment. (Doc. 24 at 7-26). Under each count, there is a parenthetical that states the name of a Defendant or Defendants. (*Id.*). The court assumes that the defendants named in those parentheticals are the defendants against which she brings the specific claim.[7] That being said, the amended complaint does not allege a single count against MERS.[8] Additionally, the court cannot find any allegation in the amended complaint accusing MERS of any alleged wrongdoing. As such, the motion to dismiss as it relates to MERS is due to be granted in full.

---

[7] The court makes this assumption even though the paragraphs of each count use the generic "Defendants" throughout the allegations. If the court did not make this assumption, the amended complaint would be a classic example of a shotgun pleading where multiple claims are asserted against multiple defendants without specifying which acts or omissions each defendant is allegedly responsible for. The court noted some, but not all, of these allegations in its recitation of the facts alleged in the amended complaint that are more akin to this shotgun-pleading style. The Eleventh Circuit has repeatedly condemned shotgun pleadings. *Starship Enters. Of Atlanta, Inc. v. Coweta Co.*, 708 F.3d 1243, 1251, n.7 (11th Cir. 2013); *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 806 n.4 (11th Cir. 2010); *Davis v. Coca–Cola Bottling Co.*, 516 F.3d 955, 979 n. 54 (11th Cir. 2008).

[8] Plaintiff does not respond to the argument in Defendants' brief regarding MERS and the lack of claims stated against it. "[F]ailure to brief and argue [an] issue during the proceedings before [a] *district* court is ground for finding that the issue has been abandoned." *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000).

## A. The Federal Claims

In her amended complaint, Perry alleges that Nationstar violated four federal statutes: the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq*. (Count Eight); the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq*. (Count Nine); the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq*. (Count Ten); and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*. (Count Eleven). (Doc. 24 at 20-26). She also alleges that Matrix violated the FCRA. (*Id*. at 23-25). Nationstar and Matrix have moved to dismiss all federal claims alleged in the amended complaint.

### 1. TILA

TILA is a remedial consumer protection statute designed to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a); *see Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). TILA requires creditors to provide consumers with "clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Id*. at 412. TILA provides a private right of action against "any creditor" who violates the requirements of the statute's credit transactions section and allows for actual

damages as a result of the failure and, with certain limitations, statutory damages. 15 U.S.C. § 1640(a).

In Count Eight of the amended complaint, Perry alleges that Nationstar violated both TILA and Regulation Z.[9] (Doc. 24 ¶¶ 77-86). Specifically, she alleges that Nationstar failed to provide required disclosures "prior to consummation" of her loan transaction, failed to make required disclosures "clearly and conspicuously in writing," and failed to "include in the finance charge certain charges imposed . . . [and] payable by plaintiff incident to the extension of credit . . ., thus improperly disclosing the finance charge." (*Id.* ¶ 81). She also alleges Nationstar made unauthorized charges in the form of attorney fees and other fees not authorized by the mortgage contract, as well as "improperly amortizing the loan." (*Id.* ¶¶ 83, 85).

As stated above, by its plain language, TILA's private right of action applies only to actions against "creditors." 15 U.S.C. § 1604(a). A "creditor" is defined as:

> a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence. . . .

---

[9] Regulation Z, 12 C.F.R. §§ 226.1 et seq., consists of various rules promulgated by the Federal Reserve Board to further the purposes of TILA. *Hendley v. Cameron-Brown Co.*, 840 F.2d 831, 833 (11th Cir. 2000).

15 U.S.C. § 1602(g). The civil liability provision of TILA does not apply generally to every person the statute regulates, but only to originating creditors. *Gregory v. Select Portfolio Servicing, Inc.,* 2016 WL 4540891, at *14 (N.D. Ala. Aug. 31, 2016).

Perry's factual allegations demonstrate that Nationstar is not, in fact, the person to whom the debt arising from the loan transaction was initially payable. According to her amended complaint, Perry financed the purchase of the home with Movement Mortgage, LLC. (Doc. 24 ¶ 5). As such, Nationstar is not a "creditor" within the meaning of TILA because it is not the party to whom the loan was initially payable. Perry's TILA claim against Nationstar is due to be dismissed.

Additionally, even if the court is incorrect in its conclusion that Nationstar is a "creditor" within the meaning of TILA, the claim is time-barred. TILA provides for a one year statute of limitations that begins to run from the date that the borrower entered into the loan transaction. 15 U.S.C. § 1640(e); In re Smith, 737 F.2d 1549, 1552 (11th Cir. 1984). The loan here was signed on November 24, 2015, almost three years before the complaint was filed, well outside the limitations period. Perry's TILA claim against Nationstar is due to be dismissed for this separate, additional reason.

## 2. RESPA

In Count Nine, Perry alleges that Nationstar violated RESPA by "failing to acknowledge or properly respond to [her] Qualified Written Request (QWR)." (Doc. 24 ¶ 87). RESPA establishes the procedures a loan servicer must follow, and certain actions it must take, upon receiving a QWR from a borrower. 12 U.S.C. § 2605(e). Section 2605(e) of the RESPA requires a loan servicer to send a written acknowledgement of the borrower's QWR within five days and a written response to the QWR within thirty days. 12 U.S.C. § 2605 (e)(1)(A), (e)(2). Failure to adequately respond to a QWR results in liability "to the borrower for each such failure in . . . an amount equal to the sum of any actual damages to the borrower as a result of the failure. . . ." 12 U.S.C. § 2605(f)(1)(A). To succeed on a claim under § 2605(e), Plaintiff "must show: (1) that Defendant is a servicer; (2) that Defendant received a QWR from the borrower; (3) that the QWR related to the servicing of the loan; (4) that Defendant failed to respond adequately; and (5) that Plaintiff[ is] entitled to actual or statutory damages." *Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1292 (N.D. Ala. 2013).

Nationstar argues that Perry's RESPA claim should be dismissed because she has not pleaded sufficient facts to establish that her QWR met the requirements of § 2605(e)(1)(B). (Doc. 26 at 15-17). Although it is an extremely close question, the court is satisfied that Perry adequately pleaded her RESPA claim and

that the claim should not be dismissed at this time.[10]  Perry alleges that she sent QWRs to Nationstar on December 5, 2017 and September 6, 2018, as well as a NOE on September 6, 2018; that Nationstar never responded to the QWRs or NOE; and that she was damaged by Nationstar's failure to provide her with the requested information about her loan because, without the requested information, she was unable to cure any alleged default or stop the foreclosure proceedings on her own and had to retain and pay an attorney to stop the foreclosure.  (Doc. 24 ¶ 88).  The court is satisfied that these allegations are minimally sufficient to state a claim for violation of RESPA, that the claim is at least plausible on its face, and provides Nationstar with fair notice of the basis for the claim.  Accordingly, Nationstar's motion to dismiss Perry's RESPA claim is due to be denied.

That being said, the court acknowledges Nationstar's argument and other decisions of district courts within the Eleventh Circuit regarding Perry's failure to attach the purported QWRs and NOE to her amended complaint and failure to explain the alleged errors referenced in the letters or how they related to the servicing of her mortgage.  (Doc. 26 at 16-17).  While the court will not require Perry to supplement her amended complaint with the alleged QWRs and NOE, the court understands that Nationstar will file a motion for summary judgment as soon

---

[10] The court notes Perry's opposition to the motion to dismiss completely misses the mark and does not address the arguments made by Nationstar.  (Doc. 30 at 26-28).  Plaintiff devotes her entire argument to explaining why Matrix should be held vicariously liable, but the amended complaint does not assert a RESPA claim against Matrix.

as practicable if it determines in discovery that the QWRs and/or NOE are deficient as a matter of law.

### 3. FCRA

In Count Ten, Perry seeks to hold Nationstar and Matrix liable under the FCRA for allegedly reporting inaccurate information regarding her loan to the national credit bureaus and failing to properly investigate her disputes. (Doc. 24 ¶¶ 91-98). "[T]he FCRA places distinct obligations on three types of entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies." *Chipka v. Bank of Am.*, 355 F. App'x 380, 382 (11th Cir. 2009). It is apparent from Perry's allegations that she is seeking to hold Nationstar and Matrix liable as "furnishers" of information, and in her opposition to Defendants' motion to dismiss she confirms as much. (Doc. 30 at 28-30).

"The FCRA imposes two separate duties on furnishers. First, [15 U.S.C.] § 1681s-2(a) requires furnishers to submit accurate information to [credit reporting agencies]. Second, § 1681s-2(b) requires furnishers to investigate and respond promptly to notices of [consumer] disputes." *Green v. RBS Nat'l Bank*, 288 F. App'x 641, 642 (11th Cir. 2008). The FCRA provides a private right of action for violations of § 1681s-2(b), and only when "the furnisher received notice of the

consumer's dispute from a consumer reporting agency." *Peart v. Shippie*, 345 F. App'x 384, 386 (11th Cir. 2009).

In her opposition to Defendants' motion to dismiss, Perry correctly asserts that "Nationstar must perform a reasonable investigation of a consumer dispute *after receiving notice from a credit bureau, such as Equifax, Experian or TransUnion*." (Doc. 30 at 29 (emphasis added)). Nowhere in her amended complaint, however, has Perry pleaded any facts to suggest that Nationstar (or Matrix) received notice of her dispute from a credit agency. Perry alleges that she informed Defendants and the national credit bureaus that she disputed the alleged inaccurate reporting (doc. 24 ¶¶ 91, 92), but she does not allege or offer any facts to suggest that the credit bureaus then notified either Nationstar or Matrix about the dispute. Therefore, she failed to plead an essential element of her FCRA claim and the claim is due to be dismissed. *See Gregory v. Select Portfolio Servicing, Inc. et al.*, 2016 WL 4540891, *18 (N.D. Ala. Aug. 31, 2016) (dismissing the plaintiff's FCRA claim where the plaintiff failed to plead any facts to suggest that the credit bureaus contacted the furnisher regarding the dispute); *Bush v. v. J.P. Morgan Chase Bank, N.A., et al.*, 2016 WL 324993 (N.D. Ala. Jan. 27, 2016) (same); *Rice v. JPMorgan Chase Bank N.A.*, 2014 WL 3889472, *6 (N.D. Ala. Aug. 5, 2014) (same). Defendants' motion to dismiss Plaintiff's FCRA claims is due to be granted.

## 4. FDCPA

Perry's final federal claim against Nationstar is for violations of the FDCPA. Perry alleges that Nationstar committed numerous FDCPA violations, including: attempting to collect amounts not owed under her mortgage contract; seeking unjustified amounts; threatening legal action that was not permitted or not actually contemplated; revealing or discussing the nature of her debt with third parties; failing to identify itself as a debt collector in its communications; and falsely stating the amount of her debt. (Doc. 24 ¶ 104). Nationstar argues that Perry's conclusory allegations are insufficient to plead an FDCPA claim and that Perry has alleged no facts demonstrating that Nationstar is a debt collector for purpose of the FDCPA. (Doc. 26 at 19-20).

The FDCPA provides a civil cause of action against "debt collectors" who violate the provisions of the Act. *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012); *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011). The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). In general, the FDCPA "applies only to debt collectors and not to creditors or mortgage servicers." *Ingram v.*

*Green & Cooper, Attorneys L.L.P.*, 2012 WL 1884598 *3 (N.D. Ga. 2012); *see also Madura v. Lakebridge Condo. Ass'n Inc.*, 382 Fed. Appx. 862, 864 (11th Cir. 2010). "[C]onsumer's creditors, a mortgage servicing company, or an assignee of a debt are not considered debt collectors, as long as the debt was not in default at the time it was assigned." *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1307 (S.D. Fla. 2009) (internal quotations and citations omitted).

In paragraph 1 of her amended complaint, Perry generally alleges that Nationstar is a "debt collector" for purposes of the FDCPA, but offers nothing in the way of factual support for her allegation. (Doc. 24 ¶ 1). The only other time "debt collector" is used in the amended complaint is in an allegation that Defendants failed to identify themselves as "debt collectors." (*Id.* at ¶ 104). This allegation merely assumes the truth of a previous legal conclusion and does not satisfy the requirements of Rule 8. The amended complaint's factual allegations do not allege facts to support the inference that Nationstar is in "any business the principal purpose of which is the collection of any debts," 15 U.S.C.A. § 1692a(6), that they "regularly collect[ ] or attempt [ ] to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," *id.*, or that the loan was in default (or being treated as in default) when Defendants acquired it, *id.* § 1692a(6)(F)(iii); Davidson v. Capital One Bank (USA), N.A., 797 F.3d 1309, 1312 n.2 (11th Cir. 2015). Instead, Perry repeatedly alleges throughout the amended

complaint that she was not in default and was not behind on her mortgage payments. (Doc. 24 ¶¶ 11, 14, 25, 26). As such, Perry's FDCPA claim against Nationstar is due to be dismissed. *See Prickett v. BAC Home Loans*, 946 F. Supp. 2d 1236, 1249 (N.D. Ala. 2013) ("Because the Complaint fails to allege facts showing the BANA is a debt collector within the meaning of the FDCPA, Plaintiffs' claim for violation of the FDCPA is subject to dismissal.").

### B. The State Law Claims

In her amended complaint, Perry also asserts state law tort claims based on negligence (Count One), wantonness (Count Two), fraud (Count Five), false light (Count Six), and defamation/libel/slander (Count Seven), along with state law claims for unjust enrichment (Count Three) and breach of contract (Count Four). All the claims are brought against Defendants Nationstar and Matrix. Defendants have moved to dismiss all of the state law claims. (Doc. 26).

### 1. FCRA Preemption

Defendants argue that Perry's negligence, wantonness, fraud, false light and defamation/libel/slander claims, to the extent they are based on alleged inaccurate credit reporting to credit agencies, are preempted by the FCRA. (Doc. 26 at 4-5). Perry does not respond in any way to this argument in her opposition brief. (*See* doc. 30). Generally, a plaintiff's failure to respond to a defendant's arguments is interpreted by courts as a decision to abandon those claims. *See Coal. for the*

*Abolition of Marijuana Prohibition*, 219 F.3d at 1326 ("failure to brief and argue [an] issue during the proceedings before [a] district court is ground for finding that the issue has been abandoned"); *Kramer v. Gwinnett County*, 306 F. Supp. 2d 1219, 1221 (N.D. Ga.) ("a party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed."), *aff'd*, 116 F. App'x 253 (11th Cir. 2004) (table decision).  That being said, Plaintiff does address her state law claims on the merits, so the court does not deem them completely abandoned notwithstanding the fact that Plaintiff failed to address the preemption issue.

There are two potentially applicable FCRA preemption provisions, 15 U.S.C. §§ 1681h(e) and 1681t(b)(1)(F).  Section 1681h(e) provides:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

Section 1681t(b)(1)(F) provides:

> No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . .

When dealing with a furnisher of credit information, these two provisions are difficult to reconcile; "§ 1681t(b)(1)(F) is an absolute bar to state causes of action, while § 1681h(e) only bars claims [where] the information was 'furnished with malice or willful intent to injure such consumer.'" *Dial v. Midland Funding, LLC*, 2015 WL 751690, at *6 (N.D. Ala. Feb. 23, 2015).

As United States District Judge Abdul K. Kallon observed, "FCRA preemption of state law torts is an area of little agreement among this district's judges." *Hamilton v. Midland Funding, LLC*, 2015 WL 5084234, at *6 (N.D. Ala. Aug. 27, 2015); *see Taylor v. Midland Funding*, LLC, 2015 WL 4670314, at *9-12(N.D. Ala. Aug. 6, 2015), and *Dial*, 2015 WL 751690 at *6-7, for overviews of the various approaches to FCRA preemption taken by the judges in this district. However, as this court noted in *Bush v. JP Morgan Chase Bank, N.A.*, there appears to be a growing consensus that tort claims based on a furnisher's alleged reporting of inaccurate credit information to credit agencies fall within the scope of section 1681t(b)(1)(F), not section 1681h(e), and are preempted:

> "The three [FCRA] sections covered by § 1681h(e)—1681g, 1681h, and 1681m—regulate disclosures *to consumers* and duties of *users* of information. These duties do not concern a *furnisher's* duties of reporting and investigation. Section 1681t(b) covers furnishers." *Schlueter v. BellSouth Tellecomms.*, 770 F. Supp. 2d 1204, 1209 (N.D. Ala. 2010). Section 1681t(b)(1)(F) preempts "the laws of any state" with respect to any subject matter regulated under § 1681s-2, and § 1681s-2, in turn, imposes duties on furnishers to provide accurate credit information to credit agencies, to investigate credit disputes

after notification, and to correct inaccurate information. *See* § 1681s-2(a) and (b). Consequently, the court agrees with the growing trend finding that §1681t(b)(1)(F) bars state law tort claims based on inaccurate credit reporting by furnishers. *See Schlueter*, 770 F. Supp. 2d at 1210- 11 (finding that § 1681t(b)(1)(F) barred the plaintiffs' state law claims against BellSouth, including their claims for negligent, reckless, and wanton conduct and misrepresentation, where the claims arose out of BellSouth's furnishing of information to credit reporting agencies); *Hamilton*, 2015 WL 5084234, at *7 (finding that § 1681t(a)(1)(F) barred the plaintiff's invasion of privacy claim based on the defendant's credit reporting."); *Taylor*, 2015 WL 4670314, at *13 (same); *Ferrell v. Midland Funding, LLC*, 2015 WL 2450615, at *6 (N.D. Ala. May 22, 2015) (same); *Dial*, 2015 WL 751690, at *7 (same); *Williams v. Student Loan Guarantee Found. of Arkansas,* 2015 WL 241428, at *13 (N.D. Ala. Jan. 20, 2015) ("§ 1681t(b)(1)(F) preempts Williams's state-law claims to the extent they address the subject matter regulated under § 1681-s2."); *Barnett v. JP Morgan Chase Bank, Nat. Ass'n*, 2013 WL 3242739, at *13 (N.D. Ala. June 26, 2013) (holding that § 1681t(b)(1)(F) preempted the plaintiff from pursuing defamation, libel, or slander claims against Chase arising out of any false reports to credit agencies).

2016 WL 324993, at * 7 (emphasis in original).

Here, Perry's negligence and wantonness claims are based, at least in part, on the allegation that Nationstar and Matrix failed to ensure that the credit information they disseminated to the national credit bureaus rose to the level of maximum accuracy and was not false, libelous, or slanderous. (Doc. 24 ¶¶ 30, 35). The claims are also based on allegations that Nationstar and Matrix failed to properly train their employees on the thorough investigation of disputed accounts and failed to remove their adverse reporting once she disputed it. (*Id*.). Perry's fraud claim is based, in part, on Nationstar and Matrix's alleged "dissemination of

inaccurate information regarding the loan account as being in default and dissemination of information regarding the credit history and credit . . . that was known to be false." (*Id*. ¶ 55). Her false light claim is based, in part, on the alleged "offensive, untrue and inaccurate reports" to the national reporting media. (*Id*. ¶¶ 60-61). Finally, while the majority of her defamation/libel/slander claim is based on the information contained publication of the foreclosure sale, a broad reading of the allegations also include a claim based on reporting to credit agencies. (*Id*. ¶¶ 66, 67, 70, 74, 76). As such, the court concludes that these state law claims are based, at least in part, on Nationstar and Matrix's alleged failure to fulfill its duties under 15 U.S.C. § 1681s-2. To the extent that Perry's negligence, wantonness, fraud, false light, libel/slander/defamation claims are based on such allegations, those claims are preempted by the FCRA. *See* 15 U.S.C. § 1681t(b)(1)(F). To the extent that they are not preempted, the court addresses Perry's state law claims below.

### 2. Negligence and Wantonness

In Counts One and Two of the amended complaint, Perry alleges Nationstar and Matrix engaged in negligent and wanton conduct regarding the servicing of her loan, attempted to collect funds not owed, caused her property insurance to be cancelled, negligently defaulted Perry, and attempted to complete a foreclosure sale. (Doc. 24 ¶ 30). Additionally, Perry claims Nationstar and Matrix negligently

and wantonly failed to prevent the dissemination of inaccurate and libelous information to others, including the credit bureaus and the general public.  (*Id*.).  Finally, Perry contends Nationstar and Matrix negligently and wantonly trained and supervised the employees responsible for her mortgage account.  (*Id*.).  In addition to the preemption argument, Defendants contend these claims fail as a matter of law because Alabama law does not recognize a cause of action for negligent or wanton servicing of a mortgage account.  (Doc. 26 at 5-6).  The court agrees.

"To establish negligence, [a] plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury."  *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994) (quoting *Albert v. Hsu*, 602 So. 2d 895, 897 (Ala. 1992)).  "To establish wantonness, [a] plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty.  To be actionable, that act or omission must proximately cause the injury of which the plaintiff complains."  *Id*.  Put another way, wantonness is not just a higher level of negligence, but involves "the conscious doing of some act or the omission of some duty while knowing of the existing conditions *and* being conscious that, from doing or omitting to do an act, injury will likely or probably result."  *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007) (emphasis in original).

Perry's claims for negligence and wantonness fail as a matter of law because "Alabama law does not recognize a tort-like cause of action for the breach of a duty created by contract." *Blake v. Bank of America, N.A.,* 845 F. Supp. 2d 1206, 1210-11 (M.D. Ala. 2012) (citations omitted). Any obligations Defendants owed to Perry arose from the legal relationship created by the loan documents. These obligations do not give rise to a duty of reasonable care generally owed to members of the public. *James v. Nationstar Mortg., LLC*, 92 F. Supp. 3d 1190, 1200 (S.D. Ala. 2015). Because the duty Perry contends Defendants breached are based on contractual agreements, her negligence and wantonness claims are not legally cognizable under Alabama law. *See U.S. Bank Nat'l Ass'n v. Shepherd*, 202 So. 3d 302, 314-15 (Ala. 2015) (holding that wantonness claims for servicing and handling mortgages are improper because the underlying duties are established by contract); *see also James*, 92 F. Supp.3d at 1198 (recognizing "a veritable avalanche of recent (and apparently unanimous) federal precedent has found that no cause of action for negligent or wanton servicing of a mortgage account exists under Alabama law").

Although not mentioned by Defendants in their motion to dismiss, Perry's negligence and wantonness claims also include allegations that Defendants failed to properly train and/or supervise its employees with regard to the handling of her loan account. (Doc. 24 ¶¶ 30, 35). Regardless of this omission, and even

assuming that Perry might otherwise be able to assert a claim for negligent or wanton training or supervision, she has not done so. In a claim for negligent or wanton training/supervision, "the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him." *Thompson v. Havard*, 235 So. 2d 853, 858 (Ala. 1970). Perry has not pleaded any acts regarding how Nationstar or Matrix employees handled her loan, what training and supervision they received, or what notice either Defendant had of their alleged incompetency. She has offered no facts from which the court could even infer that she has a plausible claim against either Defendant for failure to properly train and/or supervise their employees. Accordingly, Defendants' motion to dismiss Plaintiff's negligence and wantonness claims is due to be granted.[11]

### 3. Unjust Enrichment

Count Three of the amended complaint alleges Nationstar and Matrix were unjustly enriched by the payment of fees, insurance proceeds, and equity in Perry's home in connection with the foreclosure attempts. (Doc. 24 ¶ 40). Perry also alleges Nationstar was unjustly enriched when it improperly maintained her escrow

---

[11] The court rejects Plaintiff's attempt to rescue her negligence and wantonness claims by arguing that "federal law and regulations impose a duty of affirmative care on the servicing Defendant, Nationstar." (Doc. 30 at 12). Similar arguments have been soundly rejected. *James v. Nationstar Mortg*., LLC, 92 F. Supp. 3d 1190, 1200 n.9 (S.D. Ala. 2015); *Bush*, 2016 WL 324993 at * 9.

account and held payments in "suspense accounts" while charging late fees and interest. (*Id*. ¶ 42). Nationstar and Matrix argue the unjust enrichment claim fails because a valid contract existed between the parties. (Doc. 26 at 6-7). Yet again, Plaintiff failed to address this argument in her opposition to the motion to dismiss, undoubtedly because the law is so far in Defendants' favor.

"The doctrine of unjust enrichment is an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another." *Flying J Fish Farm v. Peoples Bank of Greensboro*, 12 So. 3d 1185, 1193 (Ala. 2008) (emphasis and internal quotation marks omitted). However, "the existence of an express contract extinguishe[s] an unjust enrichment claim altogether because unjust enrichment is an equitable remedy which issues only where there is no adequate remedy at law." *Univalor Trust, SA v. Columbia Petroleum, LLC*, 315 F.R.D. 374, 382 (S.D. Ala. 2016). Here, the amended complaint clearly alleges a written contract between the parties. (Doc. 24 ¶ 5). Because of the existence of a contract, Perry's claim for unjust enrichment is due to be dismissed. *See Prickett v. BAC Home Loan,* 946 F. Supp. 2d 1236, 1248 (N.D. Ala. 2013); *Bias v. Cenlar Agency, Inc*., 2018 WL 2365428, at *4 (N.D. Ala. 2018); *Rice*, 2014 WL 3889472, at *11.

### 3. Breach of Contract

Count Four of the amended complaint alleges a breach of contract claim against both Nationstar and Matrix. (Doc. 24 ¶¶ 45-54). Although first arguing that the amended complaint fails to state a claim against either Defendant, in their reply brief, Defendants concede that, at this stage, Plaintiff states a claim for breach of contract against Matrix. (Doc. 31 at 4). That being said, Nationstar contends the breach of contract claim against it should be dismissed because the amended complaint does not allege it was a party to the contract, but instead repeatedly asserts that Nationstar was the servicer of the loan. (*Id*. at 5; *see also* Doc. 26 at 7-8).

"The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Fin. Corp*., 29 So.3d 872, 880 (Ala. 2009) (internal quotations and citations omitted). Nationstar only challenges the first element – whether there was a contract binding the parties.[12] (Doc. 26 at 7-8; Doc. 31 at 4-5). Nowhere in the amended complaint does Plaintiff allege that Nationstar was a party to the contract. Instead, Plaintiff alleges she entered into a contract with her Lender.

---

[12] The court notes the inconsistency with this contention and Nationstar's arguments that Plaintiff's negligence, wantonness, and unjust enrichment claims fail because of the existence of a contractual relationship between the parties. The court does not have to reconcile this inconsistency, however.

(Doc. 24 ¶¶ 45, 18).  That being said, Plaintiff alleges that "[t]he loan was later sold and transferred to Nationstar . . . ."  (*Id.* ¶ 46).[13]  Although by no means clear as to when or how this sale and/or transfer occurred, this allegation is minimally sufficient to allege the existence of a contract between Plaintiff and Nationstar, separate and apart from the servicing agreement.  As such, the motion to dismiss the breach of contract claim against Nationstar is due to be denied.

### 4. Fraud

Count Five of the amended complaint purports to state a claim for fraud against both Nationstar and Matrix.  (Doc. 24 ¶¶ 55-58).  In addition to their FCRA preemption argument, Nationstar and Matrix argue that Perry's fraud claim is due to be dismissed because she has not pleaded her fraud allegations with the particularity required by Rule 9(b).  (Doc. 26 at 8-10).  As discussed above, Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b), a complaint must set forth "(1) precisely what statements were made in what documents or oral misrepresentations or what omissions were made, and (2) the time and place of each such statement and the

---

[13] While the court acknowledges the amended complaint later states that the contract was assigned to Nationstar and repeatedly states that Nationstar was the servicer of the loan, the amended complaint arguably alleges that at some point in time (whether or not this pans out to be a reality in discovery is beyond the point), the contract was "sold and transferred to Nationstar."  This is minimally enough at this stage in the litigation.

person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba*, 256 F.3d at 1202 (quoting *Brooks v. Blue Cross & Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1371 (11th Cir. 1997)) (quotation marks omitted). Plaintiff's amended complaint fails to meet this heightened pleading standard.

Perry's fraud allegations are bare-boned, general statements that are far too vague to state a claim for relief consistent with Rule 9(b). Specifically, she alleges that Defendants "misrepresented" that the loan was in default; disseminated "inaccurate information about the loan account as being in default"; disseminated "inaccurate information" about her credit and credit history and credit that was "known to be false." (Doc. 24 ¶ 55). She does not identify any person at Nationstar or Matrix who was responsible for making the alleged misrepresentations, how and when the alleged misrepresentations were communicated, the manner in which the alleged misrepresentations misled her, or what either Defendant allegedly obtained by the alleged fraud. Such allegations do not come close to the pleading standard required by Rule 9(b). *See Bush*, 2016 WL 324993, at *10 (dismissal of virtually identical fraud claim); *Zanaty v. Wells Fargo Bank, N.A.*, 2016 WL 6610443, at *8 (N.D. Ala. Nov. 9, 2016) (same);

*Jackson*, 2016 WL 4942085, at *8 (same); *Gregory*, 2016 WL 4540891, at *13 (same). Plaintiff's fraud claim is due to be dismissed.

Additionally, Plaintiff's amended complaint fails to explain how she relied on the misstatements to his detriment. Plaintiff alleges that she "proceeded with the execution of the loan" because of Defendants' misstatements, (doc. 24 ¶ 57), but Perry agreed to the mortgage loan in 2015, several years before the communications that appear to form the basis of the fraud count. Thus, as a matter of logic and law, the misstatements presented by Plaintiff could not have led her to execute the mortgage loan. Accordingly, Plaintiff's fraud count is also due to be dismissed for its implausible reliance allegation.

### 5. **False Light**

In Count Six of the amended complaint, Perry claims that Nationstar and Matrix made inaccurate reports to "the national credit reporting media and to her homeowner insurance carrier." (Doc. 24 ¶ 61). In addition to arguing that this claim is preempted by the FCRA, Defendants argue the claim fails because it is premised on furnishing information to small groups. (Doc. 26 at 11). Once again, Plaintiff offers no specific argument in response to Defendants' arguments. (Doc. 30 at 22-23).

To establish a claim for false light, a plaintiff must show that the defendant (1) "gave publicity to a matter" concerning the plaintiff, (2) placed the plaintiff in a

"false light" that would be highly offensive to a reasonable person, and (3) did so with knowledge that the publicized matter was false or with reckless disregard to its truth or falsity. *Regions Bank v. Plott*, 897 So. 2d 239, 244 (Ala. 2004) (quoting *Butler v. Town of Argo*, 871 So. 2d 1, 12 (Ala. 2003)). Unlike a defamation claim, falsity is an element of a false light claim and must be proven by the plaintiff. *Id*. Moreover, a false light defendant must communicate the matter at issue to the public at large "or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id*. at 245 (emphases omitted) (quoting *Ex parte Birmingham News, Inc*., 778 So. 2d 814, 818 (Ala. 2000)). For example, the Alabama Supreme Court has held that statements to two banks and two merchants that an account holder lacked sufficient funds to satisfy certain checks does not constitute publicizing a matter for purposes of a false light claim. *Id*.

Here, Defendants seek dismissal of the false light claim because it is premised on furnishing information to small groups of individuals, namely the credit bureaus and a home insurance carrier. (Doc. 26 at 11). Because Perry's false light claim is clearly based on statements to the credit bureau agencies and her home insurance carrier,[14] the court agrees with Defendants and joins the other

---

[14] The amended complaint cannot be read to provide fair notice of a false light claim based on the foreclosure sale notices published in the Shelby County Reporter. Nowhere in her claim for

district courts in this circuit that have dismissed similar claims with similar allegations. *See Rice v. Seterus, Inc.,* 2018 WL 513345, at * 7-8 (N.D. Ala. Jan., 23, 2018) (dismissal of false light claim premised on statements made to "the national media" and plaintiff's homeowner's insurance carrier, in an action filed by Plaintiff's counsel); *Jackson v. Bank of Mellon*, 2016 WL 4942085, at *10 (S.D. Ala. July 19, 2016) (recommending, in an action filed by Plaintiff's counsel, the dismissal of a similar false light claim premised on statements made to the "credit reporting media" and an insurance carrier for failure to plead the publicity element), *adopted*, 2016 WL 4942012 (S.D. Ala. Sept. 15, 2016).  Accordingly, Plaintiff's claim for false light is due to be dismissed.

### 6.  Defamation, Slander, and Libel

In Count Seven of the amended complaint, Perry alleges that Defendants published and communicated false and defamatory statements that she was in default.  (Doc. 24 ¶¶ 64-76).  Specifically, Perry alleges that the foreclosure sale notices in the Shelby County Reporter were defamatory and that Defendants either knew they were false or recklessly disregarded their potential falsity.  (*Id*. ¶¶ 67, 69).  Perry pleads reputational damages from Defendants' publication.  (*Id*. ¶¶ 70, 73).

---

false light does the amended complaint mention this newspaper, but clearly refers to the foreclosure notice in her defamation/libel/slander count.

Before discussing the merits of this claim, the court first notes that the amended complaint uses the generic "Defendants" throughout its allegations in this court. (*Id*. ¶¶ 64-76). The parenthetical under the count also states that the claim is against both Nationstar and Matrix. That being said, in the statement of facts, Plaintiff clearly and unambiguously alleges that Matrix, and not Nationstar, "was the purported owner of the loan at the time that the foreclosure sale was initiated and is the party that advertised the property for foreclosure sale." (*Id*. ¶ 7). Because Plaintiff's defamation/libel/slander claim is based upon this publication,[15] and there are no allegations (other than the rejected shotgun pleadings) in the complaint relating to Nationstar, this claim is due to be dismissed with regard to Nationstar. The court now turns to the merits of the claim as it relates to Matrix.

There are two types of defamation: libel, which involves the use of print media to publish a defamatory comment; and slander, which involves the oral expression of a defamatory comment. *Blevins v. W.F. Barnes Corp.*, 768 So. 2d 386, 390 (Ala. Civ. App. 1999). Because Plaintiff's claim is based on written communications, the foreclosure sale notices, her claim is in reality one for libel, not slander.[16] To prove a communication was defamatory, a plaintiff must present

---

[15] Any alleged publication based on reporting to credit agencies is preempted by the FCRA.

[16] Although paragraph 71 of the amended complaint states the communications were oral and/or written, the specific allegations relating to this claim only refer to written communications. (*See* Doc. 24 ¶¶ 67, 73).

evidence establishing the following elements: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication of that statement to a third party; (3) fault amounting to at least negligence on the part of the defendant; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement. *McCaig v. Talladega Pub. Co., Inc.*, 544 So. 2d 875, 877 (Ala. 1989) (citing Restatement (2d) of Torts § 558 (1977)).  As opposed to slanderous statements, libelous statements are actionable *per se*, without a showing of special damages, "if they directly tend to prejudice anyone in his office, profession, trade, or business, or in any lawful employment by which he may gain his livelihood."  *Kelly v. Arrington*, 624 So. 2d 546, 549 (Ala. 1993). As a general matter, statements "charging nonpayment of debts or insolvency are actionable without special damage being shown[ ] when they refer to merchants, tradesmen, or others in occupations where credit is essential."  *Harrison v. Burger*, 103 So. 842, 843-44 (Ala. 1925) (holding that publications accusing the plaintiff of failing to pay a debt were not libel *per se* because the plaintiff did not claim to engage in an occupation where credit was essential); c*f. Gen. Elec. Credit Corp. v. Alford & Assocs., Inc*., 374 So. 2d 1316, 1319-20 (Ala. 1979) (concluding that publications to mobile home suppliers about a plaintiff's failures to meet financial obligations were libelous).

Defendants contend Perry's claim fails because she has not pleaded any different, special harm caused by the publication of the statements. (Doc. 26 at 12). "Special damages are the material harms that are the intended result or natural consequence of the [defamatory] statement . . ., and the general rule is that they are limited to 'material loss capable of being measured in money,' Restatement (2d) of Torts § 575, cmt. b, at 198." *Butler v. Town of Argo*, 871 So. 2d 1, 18 (Ala. 2003) (internal citation omitted) (quoting *Shook v. St. Bede Sch.*, 74 F. Supp. 2d 1172, 1180 (M.D. Ala. 1999)). Although it is a close call, the court concludes Perry's amended complaint sufficiently alleges the existence of special damages because she alleges that she lost business clients because of the foreclosure sale notices. (Doc. 24 ¶ 73 n. 19). Specifically, Perry states that she and her son own and operate a cleaning service and that "the business suffered a loss of clients . . . causing an income loss for the Plaintiff and her family business." (*Id.*). At this early stage, such allegations constitute a sufficient allegation of monetary damages that are the natural consequence of an allegedly false statement denigrating Plaintiff's creditworthiness, and, as a result, Plaintiff's claim for libel is not due to be dismissed.[17] *See Rice*, 2018 WL 513345, at * 9 (refusing to dismiss a claim for

---

[17] The court notes that at the summary judgment stage, a defamation plaintiff who must prove special damages must provide "*substantial evidence* indicating that he had suffered a material harm, capable of being measured in money damages, as a consequence of [Defendant's] statements." *Casey v. McConnell*, 975 So. 2d 384, 390 (Ala. Civ. App. 2007) (emphasis added).

libel where Plaintiff alleged he lost business clients because of the foreclosure sale notices).

**C. Leave to Amend**

Throughout her response in opposition to Defendants' motion to dismiss, Perry requests leave to amend her already amended complaint to correct any deficiencies in all her claims, except her claims for defamation, libel, slander and false light and her RESPA claim. (Doc. 30 at 15-22, 23-26, 28-34). The court declines to allow leave to amend. Perry was placed on notice of the deficiencies to her complaint with Defendants' first motion to dismiss. (Doc. 8). She has had one opportunity to correct the deficiencies and has failed to do so. In view of the opportunity already afforded to Perry to amend her complaint, the allegations contained in the amended complaint, and the foregoing legal determinations by the court, there is no reason to believe Perry will be able to correct the deficiencies if she is given a second bite at the apple.

**V. CONCLUSION**

Based on the foregoing, Defendants' motion to dismiss is due to be granted in part and denied in part as follows: all claims against Defendant MERS are due to be dismissed; Perry's negligence, wantonness, unjust enrichment, fraud, false light, TILA, FCRA and FDCPA claims against the remaining defendants (Nationstar and Matrix) are due to be dismissed; and Perry's breach of contract against both

remaining defendants, her libel claim against Matrix, and her RESPA claim against Nationstar will remain. Additionally, Perry's count for declaratory relief will remain. To the extent Perry requests permission to file a second amended complaint, the request is due to be denied.[18] An order consistent with this memorandum opinion will be entered.

**DATED** this 15th day of April, 2019.

_John E. Ott_
_____
**JOHN E. OTT**
Chief United States Magistrate Judge

---

[18] Plaintiff's amended complaint comes close to running afoul of the confines of Rule 11, particularly in light of the rulings of the Eleventh Circuit and rulings of this court regarding other complaints filed by counsel for Plaintiff, that are strikingly similar, if not verbatim in some places. *See Bias v. Cenlar Agency, Inc.,* 2018 WL 2365428, (N.D. Ala. May 24, 2018), *Rice v. Seterus, Inc.*, 2018 WL 513345 (N.D. Ala. Jan. 23, 2018); *Gregory.,* 2016 WL 4540891 (N.D. Ala. Aug. 31, 2016); *Zanaty*, 2016 WL 6610443 (N.D. Ala. Nov. 9, 2016); *Bush.*, 2016 WL 324993 (N.D. Ala. Jan. 27, 2016). Counsel for Plaintiff should take note of the repeated rejection as a matter of law of certain claims by the courts in this district.